UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

BRIAN T. WEISS, On Behalf Of Himself     05-cv-04617
and All Others Similarly Situated,

                         Plaintiffs,     **MEMORANDUM OPINION AND ORDER**

    -against-

FRIEDMAN, BILLINGS, RAMSEY GROUP,
INC., *et al.*,

                         Defendants.
-----------------------------------------------------------------x

VAN DER JAGT FAMILY TRUST,     05-cv-04706
Individually, and VAN DER JAGT FAMILY
TRUST, On Behalf Of All Others Similarly
Situated,

                         Plaintiffs,

    -against-

FRIEDMAN, BILLINGS, RAMSEY GROUP,
INC., *et al.,*

                         Defendants.
-----------------------------------------------------------------x

```
-------------------------------------------------------------x
```

| | |
|---|---|
| JOHN GRAEBNER, on Behalf of Himself and a Class of Persons Similarly Situated | 05-cv-04771 |
| Plaintiff, | |
| -against- | |
| FRIEDMAN, BILLINGS, RAMSEY GROUP, INC., *et al.*, | |
| Defendants. | |

```
-------------------------------------------------------------x
```

| | |
|---|---|
| MICHELLE POSNER, Individually and on Behalf of All Others Similarly Situated, | 05-cv-04795 |
| Plaintiff, | |
| -against- | |
| FRIEDMAN, BILLINGS, RAMSEY GROUP, INC., *et al.*, | |
| Defendants. | |

```
-------------------------------------------------------------x
```

| | |
|---|---|
| LEMON BAY PARTNERS, LLP, | 05-cv-04818 |
| Plaintiff, | |
| -against- | |
| FRIEDMAN, BILLINGS, RAMSEY GROUP, BILLINGS, INC., *et al.*, | |
| Defendants. | |

```
-------------------------------------------------------------x
```

```
---------------------------------------------------------------x
SAM MANEWITZ, on Behalf of Himself and a            05-cv-04824
Class of Persons Similarly Situated,

                        Plaintiff,

        -against-

FRIEDMAN, BILLINGS, RAMSEY GROUP,
INC., et al.,

                        Defendants.
---------------------------------------------------------------x
STEVEN WEISSMAN,                                    05-cv-04851

                        Plaintiff,
        -against-

FRIEDMAN, BILLINGS RAMSEY GROUP,
INC., et al.,

                        Defendants.
---------------------------------------------------------------x
DANIEL C. PFISTER, JR. and HONEY LEE                05-cv-04877
RICHLESS, on Behalf of Themselves and a
Class of Persons Similarly Situated,

                        Plaintiffs,

        -against-

FRIEDMAN, BILLINGS RAMSEY GROUP,
INC., et al.,

                        Defendants.


---------------------------------------------------------------x
```

---------------------------------------------------------------x
MERLE DAVIS, On Behalf of Himself and All    05-cv-04889
Others Similarly Situated,

      Plaintiff,

 -against-

FRIEDMAN, BILLINGS, RAMSEY GROUP,
INC., *et al.*,

      Defendants.

---------------------------------------------------------------x
STEVEN A. ETTINGER, On Behalf of Himself    05-cv-05090
and All Others Similarly Situated,

      Plaintiff,

 -against-

FRIEDMAN, BILLINGS RAMSEY GROUP,
INC., *et al.*,

      Defendants.
---------------------------------------------------------------x
L. NORMAN SHOWERS, Individually and on    05-cv-06219
Behalf of all Others Similarly Situated,

      Plaintiff,

 -against-

FRIEDMAN, BILLINGS RAMSEY GROUP,
INC., *et al.*,

      Defendants.
---------------------------------------------------------------x

  Presently before the Court are eleven related securities fraud actions brought against

investment bank Friedman, Billings, Ramsey Group, Inc. ("FBR") and certain of its directors and

officers. In each case, plaintiffs seek certification of a class of investors allegedly injured by a series of materially misleading press statements issued by FBR between January 29, 2003 and April 25, 2005 (the "Class Period"). The first-filed of these related actions was brought on May 11, 2005 in the Southern District of New York under the caption *Weiss v. Friedman, Billings, Ramsey Group, Inc., et al.,* No. 05-cv-4617-RJH ("the *Weiss* action"). That same day, Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin"), counsel in the *Weiss* action, caused a notice to be published on *Business Wire* advising purchasers of FBR securities that (1) a class action had been commenced in the United States District Court for the Southern District of New York; (2) the class included all plaintiffs who had purchased FBR common stock during the period between January 29, 2003 and April 25, 2005; (3) the complaint asserted claims charging defendants with, *inter alia*, artificially inflating its stock price during the class period by allegedly misrepresenting material information concerning its role as a placement agent for an issuer in a 2001 "PIPE" (private investment in public equity) transaction, as well as the ensuing governmental investigation thereof; and (4) any class member wishing to serve as lead plaintiff and choose lead counsel was required to move the court within sixty days. Ten similar actions were filed shortly thereafter.

On July 11, 2005, this Court received motions for consolidation and appointment of lead plaintiff and lead counsel by the following plaintiffs: (1) the Operating Engineers Trust,[1] represented by Lerach Coughlin; (2) Mississippi PERS,[2] represented by Wolf Popper LLP; (3)

---

[1] Comprised of Locals 302 and 612 of the International Union of Operating Engineers – Employers Construction Industry Retirement Trust.
[2] The Public Employees' Retirement System of Mississippi.

the Schear Group,[3] represented by Strauss & Troy; (4) the FBR Group,[4] represented by Milberg Weiss Bershad & Schulman LLP; (5) the Koebel Group,[5] represented by Schiffrin & Barroway, LLP; (6) the Stewart Plaintiffs,[6] represented by Murray, Frank & Sailer LLP and Glancy Binkow & Goldberg LLP; and, (7) the Saulsar Group,[7] represented by Stull, Stull & Brody.

These seven motions are now before the Court. For the reasons set forth below, the Court hereby consolidates the eleven actions, appoints the Operating Engineers Trust as lead plaintiff, and designates the firm of Lerach Coughlin as lead counsel.

## DISCUSSION

### I. Consolidation of the Actions

Rule 42(a) provides that a court may order all actions consolidated if they involve "common issues of law or fact." Fed. R. Civ. P. 42(a). In determining the propriety of consolidation, district courts have "broad discretion," and generally favor the view that "considerations of judicial economy favor consolidation." *Ferrari v. Impath, Inc.*, 2004 WL 1637053, at *2 (S.D.N.Y. July 20, 2004) (citations and quotations omitted). Indeed, several

---

[3] Comprised of Neal Schear, Steven Franklin, Mario Dubal, Barton Gauker, Robert Rosenberger, Tony Gregory and Steven Ettinger.
[4] Comprised of Central Laborers' Pension Fund, International Union of Operating Engineers Local 825 Pension Fund, New Jersey Carpenters Pension and Annuity Funds, and Ronald E. Cuneo.
[5] Comprised of Wayne Koebel, Costas Papson, Joseph Rome, Edward and Marilyn Fletcher, and Ronald Sonneman.
[6] Comprised of Roy Stewart, Steve Alger and Louis Adorian.
[7] Comprised of Saulsar Enterprises Ltd. Profit Sharing Plan, Charles Panzer, George Barletta, ABT Electronics, Inc., Charles H. Riskin, Abraham A. Witteles, and Kenneth G. Rubell.

courts have noted that consolidation is particularly appropriate in the context of securities class actions if the complaints are "based on the same 'public statements and reports'" and defendants will not be prejudiced. *Id.*, 2004 WL 1637053, at *2 (quoting *Mitchell v. Complete Mgmt., Inc.*, 1999 WL 728678, at *1 (Sept. 17, 1999)).

Each of these actions implicates similar or overlapping claims under Sections 10(b), rule 10b-5 promulgated thereunder, and 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act"). The complaints, brought by purchasers of FBR securities during the Class Period, involve similar assertions of fact: that defendants made material misrepresentations regarding the earnings impact of FBR's involvement in, and ensuing governmental investigation of, a 2001 PIPE transaction. On this basis, the Court finds that the actions involve "common issues of law and fact," and hereby consolidates them for all purposes.

The caption of these consolidated actions shall hereinafter be referred to as "*In re FBR Inc. Securities Litigation.*" All relevant documents and submissions shall be maintained as one file under Master File No. 05-cv-04617 (RJH). Any other actions now pending or later filed in this district that arise out of or are related to the same facts as alleged in the above cases shall be consolidated for all purposes, if and when they are brought to this Court's attention, whether by application to the Court or otherwise.

## II. <u>Appointment of Lead Plaintiff</u>

### A. *The Notice and Filing Requirements Under the PSLRA*

As noted above, the Operating Engineers Trust, Mississippi PERS, the Schear Group, the FBR Group, the Koebel Group, the Stewart Group, and the Saulsar Group have each moved to

be appointed as lead plaintiff. The Private Securities Litigation Reform Act of 1995, Pub.L. 104-67, 109 Stat. 737 (1995), governs the procedure for appointing a lead plaintiff where, as here, claims are brought under the Securities and Exchange Act of 1934. As an initial matter, the PSLRA requires the plaintiff in the first-filed action to cause a notice to be published in a national, business-oriented publication within 20 days of filing the complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). The notice must inform members of the purported class of (1) the details and pendency of the action; and (2) their right to seek appointment as lead plaintiff within 60 days after the date on which notice is published. *Id.*

In the instant case, counsel in the *Weiss* action published notice on *Business Wire* on May 11, 2005. *See* 15 U.S.C. §78u-4(a)(3)(A)(ii) (where multiple related actions are brought, notice shall be published only once). That notice set forth the pendency of the action, the claims asserted therein, the purported class action period and the right of any class member to seek appointment as lead plaintiff. Accordingly, the notice satisfied the requirements of the PSLRA, and triggered the sixty-day period in which class members could move to be appointed as lead plaintiff. The aforementioned movants filed timely applications, and so the Court shall examine which of the seven is the "most adequate" lead plaintiff under the terms of the PSLRA.

### B. The Most Adequate Plaintiff

In 1995, Congress enacted the PSLRA to address perceived abuses in securities fraud class actions created by lawyer-driven litigation. *Ferrari*, 2004 WL 1637053, at *3; *see* H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ("H.R. Conf. Rep. No. 104-369"). Consistent with this goal, the PSLRA was designed to encourage "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders" to participate in the litigation and exercise control over the selection and actions of counsel.

8

*Ferrari*, 2004 WL 1637053, at *3 (internal citations and quotations omitted). By enacting the PSLRA and "requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff'," Congress sought to "increase the likelihood that institutional investors" will step forward as the ideal lead plaintiffs in private securities litigation. H.R. Conf. Rep. No. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 679, 690.

In accordance with this intent, the PSLRA provides that the presumptively most adequate lead plaintiff, among the candidates who either "filed the complaint or made a motion in response to a notice," is that which that has "the largest financial interest" in the relief sought by the class *and* "otherwise satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Once the presumptive lead plaintiff has been determined, other class members may rebut the designation with proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

"The statute does not define what the 'greatest financial interest' is, nor does the legislative history elaborate on the term." *In re McKesson HBOC, Inc. Sec. Litig*., 97 F.Supp.2d 993, 997 (N.D.Cal. 1999). Courts have considered four factors to be relevant in calculating the financial interest of a class member: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 2004 WL 1179311, at *7 (S.D.N.Y. May 27, 2004) (quoting *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *The*

*Constance Sczesny Trust*, 223 F.R.D. at 323; *Ferrari*, 2004 WL 1637053, at *4.

Here, the Operating Engineers Trust, with losses of $917,235, and Mississippi PERS, with losses of $796,004, have both suffered losses that are several hundred thousand dollars higher than the movant with the next highest losses, the Schear Group (with $548,350). As the movant with the largest losses, the Operating Engineers Trust appears to have the largest financial interest in this matter. However, Mississippi PERS urges the Court to hold that the $121,231 difference in loss between itself and Operating Engineers Trust is negligible,[8] and instead take note of the remaining *Lax* factors: the number of gross shares, and the number of net shares, purchased during the class period (January 29, 2003 to April 25, 2005), as well as the total net funds expended during the class period. Mississippi PERS emphasizes that it purchased 77,755 more shares in gross than did Operating Engineers Trust during the period, that its net purchases were greater by 244,380 shares, and that it expended $3,190,151.00 more in net funds.

As an initial matter, it appears that the difference in losses is $121,231 which, in the Court's view, is not "negligible." And, given the difference, plaintiffs' losses may outweigh the other *Lax* factors in terms of relevance in determining who has the greatest financial interest. "The amount of financial loss is the most significant of [the *Lax*-style] elements." *In re Vicuron Pharma., Inc. Sec. Litig.*, 225 F.R.D. 508, 510-11 (E.D.Pa. 2004); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D.Ill. 2005) (in determining largest financial interest, "most courts simply determine which potential lead plaintiff has suffered the greatest total losses"); *In re Bally Total Fitness Sec. Litig.*, No. 04 C 4697, 2005 WL 627960, at *4 (N.D.Ill. Mar. 15, 2005)

---

[8] Mississippi PERS originally calculated a loss of $858,956, or $57.569 less than the Operating Engineers Trust. However, after calculating a loss consistent with the Court's Order of December 16, 2005, it appears that its loss is $796,004 using either LIFO or FIFO. *See* Dec. 30, 2005 Supp. Submission of Mississippi PERS in Further Support of its Motion for Appointment of Lead Plaintiff and for Approval of Selection of Lead Counsel. Thus, the difference in loss between the movants is $121,231.

("[S]ome of the lead plaintiff candidates who are in the middle of the pack in terms of losses … contend that we should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended by the plaintiff during the class period … It is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all … We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball."). As the Operating Engineers Trust points out, Mississippi PERS has not directed the Court to any case where a plaintiff who did not have the greatest actual loss was found to have the greatest financial interest based on the remaining *Lax* factors. In *In re Espeed. Inc. Sec. Litig.*, the only case that Mississippi PERS brings to the Court's attention, the court actually undertook a careful accounting analysis to determine that the lead plaintiff was the movant with the quantifiably "greatest losses." *In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *5 (S.D.N.Y. 2005).

Moreover, the fact that Mississippi PERS has prevailed here on the second *Lax* factor (net shares purchased) diminishes in importance upon the realization that, here, partial corrective disclosures were reaching investors on a periodic basis—on November 9, 2004, April 4, 2005, and April 25, 2005. Thus, despite the fact that all the Operating Engineers Trust's shares were sold before the class period ended, one would not necessarily have to conclude that the Trust's losses are unattributable to the alleged fraudulent inflation. The Trust bought 83.4% of its shares prior to the initial partial disclosure, and sold following such revelation. This distinguishes the instant case from this Court's observation in *Andrada v. Atherogenics* that, as the entity left with shares following the full revelation of fraud, net purchasers may frequently have the greater

financial interest in the litigation. 2005 WL 912359 at *4 (S.D.N.Y. April 19, 2005); *see also In re McKesson HBOC, Inc. Sec. Litig.*, 97 F.Supp.2d 993, 998 (N.D.Cal. 1999) (where there was "little evidence of partial corrective disclosures reaching investors," the court declined to count losses by 'in-and-out' traders when determining the plaintiff with the greatest financial interest in the litigation.) Thus, upon an examination of relevant factors, but without determining the precise weight to be given to each factor, the Court finds that the Operating Engineers Trust has the largest financial interest in this litigation.

The Operating Engineers Trust must also "satisfy the requirements articulated in Rule 23 of the Federal Rules of Civil Procedure" in order to create the presumption that it is the most appropriate lead plaintiff under the PSLRA. *Barnet v. Elan Corp.*, 2005 WL 1902855, at *5 (S.D.N.Y. August 08, 2005). "Rule 23 sets forth four prerequisites—universally referred to as numerosity, commonality, typicality and adequacy—to be considered in evaluating the propriety of class certification, although only the typicality and adequacy criteria are relevant to the selection of lead plaintiff." *Id.* (citing *The Constance Sczesny Trust v. KPMG LLP, et al.*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004). "At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *5 (S.D.N.Y. July 13, 2005). The typicality requirement will be satisfied "where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Id.* The adequacy requirement will be satisfied "where (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* Here, the Court finds that

Operating Engineers Trust meets these requirements. It makes the same claim as the rest of the class—that it has been injured by the fraudulent manipulation of FBR's stock—and its counsel, Lerach Coughlin, is experienced in the management of class action litigation.

Nevertheless, proof that the Operating Engineers Trust "will not fairly and adequately represent the interests of the class or ... is subject to unique defenses that render such plaintiff incapable of adequately representing the class" will rebut the presumption in favor of this candidate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mississippi asserts here that the Operating Engineers Trust may be subject to a unique defense because of "its inability to prove loss causation." Mississippi PERS's July 25, 2005 Opp. Brief at 7. However, the Operating Engineers Trust is not unable to prove loss causation simply because all of its shares were sold before the end of the Class Period. As discussed *supra*, this is a case involving partial disclosures, as Mississippi PERS concedes and as no movant controverts. In *Montoya v. Mamma.com Inc*. this past May, the court appointed a lead plaintiff who, despite its "in-and-out" status,[9] sold a substantial portion of shares after a partial disclosure, and "therefore, can allege that 'the subject of the fraudulent statement or omissions was the cause of the actual loss suffered, [thusly satisfying] the tests articulated by the Supreme Court in *Dura* [*Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627 (2005)], and the Second Circuit in *Lentell*. [*v. Merrill Lynch & Co., Inc*., 396 F.3d 161 (2d Cir. 2005)]." 2005 WL 1278097, at *2 (SDNY May 31, 2005) (indicating that the *Dura* and *Lentell* loss causation requirements do not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline).

---

[9] "'[I]n and out purchasers'" are those individuals or entities that purchase and sell shares within the class period and, thus, obfuscate loss calculations." *Montoya v. Mamma.com Inc*., 2005 WL 1278097, at *2 (S.D.N.Y. 2005).

Furthermore, even if defendants were to subject plaintiffs like the Operating Engineers Trust to a challenge on the inability to prove loss causation, such a defense surely cannot be described as unique. As the Operating Engineers Trust notes, three out of the seven movants currently before the court sold all their shares before the end of the class period. (Aug. 4, 2005 brief at 7.) *See Montoya*, 2005 WL 1278097, at *2 ("[S]ix of the nineteen Movants currently before this Court were 'in-and-out purchasers,' and, at least at this stage, 'in and out purchasers' do not appear to be 'unique' and, thus, 'render such plaintiff incapable of adequately representing the class.') (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb)). Consequently, the presumption that Operating Engineers Trust is the most adequate lead plaintiff has not been rebutted here.

The Court is aware that disagreements may arise throughout this action, and as such, reserves the right to modify this lead plaintiff structure in the event that litigation is stalled, expenses become unnecessarily duplicative or wasteful, or the structure becomes otherwise unmanageable. In the meantime, the action shall proceed with the Operating Engineers Trust as sole lead plaintiff.

### III. Appointment of Lead Counsel

The Operating Engineers Trust has further moved to appoint Lerach Coughlin Stoia Geller Rudman & Robbins LLP lead counsel. The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel." 15 U.S.C. §78u-4(a)(3)(B)(v). The Operating Engineers Trust has submitted firm information that indicates that Lerach Coughlin have served as lead counsel in several securities fraud class actions, and are

otherwise well-qualified. Accordingly, the Court appoints Lerach Coughlin Stoia Geller Rudman & Robbins LLP as lead counsel.

## IV. Conclusion

For the foregoing reasons, the Court consolidates the captioned actions, appoints the Operating Engineers Trust as lead plaintiff, and designates Lerach Coughlin Stoia Geller Rudman & Robbins LLP lead counsel. Plaintiff shall file a consolidated class action complaint within 30 days of this Order. Defendants shall file their answer or move within the 30 days after the consolidated complaint is filed. The Clerk is directed to close the motions for appointment as lead plaintiff [docket numbers 3, 6, 7, 10, 13, 16].

SO ORDERED.

Dated: New York, New York
January 24, 2006

Richard J. Holwell
United States District Judge